EL PUEBLO DE PUERTO RICO, querellante, *v.* CENTRAL CAMBALACHE, ·demandada.

Núm. 3.—*Sometido:* Junio 20, 1943. *Resuelto:* Noviembre 5, 1943.

*Jaime Sifre* y *F. M. Susoni,* abogados de la querellada; *Miguel Guerra-Mondragón,* abogado de la Autoridad de Tierras; *Francisco A. Arrillaga,* . Asesor Legal especial de la Autoridad de Tierras; *Mariano Acosta Velarde,* y *Luis E. Dubón, Félix Ochoteco, Jr.,* y *B. Sánchez Castaño,* los tres últimos por el Colegio de Abogados de Puerto Rico, como *amicus curiae.*

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Entre la Central Cambalache y la Autoridad de Tierras de Puerto Rico han surgido ciertas diferencias de criterio relacionadas con la designación y pago de honorarios del notario que habrá de autorizar la escritura de compraventa que en cumplimiento del decreto por consentimiento dictado en este caso el 6 de marzo de 1942 deberá otorgar la primera a favor de la segunda. Alega la· Autoridad de Tierras que se propone (1) exigir que sea uno de los abogados de la Autoridad de Tierras en ejercicio del notariado el que autorice dicha escritura; (2) hacer que tal abogado notario cobre a la vendedora el arancel completo; (3) ingresar el importe de dichos honorarios en los fondos generales de la Autoridad de Tierras; y (4) no permitir al notario autorizante de la referida escritura otro emolumento que el sueldo que como abogado percibe de la Autoridad de Tierras.

Sostiene en contrario la Central Cambalache que la Autoridad de Tierras de Puerto Rico no tiene derecho a realizar tales propósitos,

(1) porque dicha agencia gubernativa no puede ejercer el notariado;

(2) porque esta transacción de compraventa es de naturaleza forzosa en lo que a la Central respecta y por lo tanto debe regirse a todos los efectos legales por lo prescrito en el artículo 1345 del Código Civil, a virtud del cual la Central tiene derecho a recibir el valor de la cosa de que es dueña, en cantidad representativa de una justa compensación, sin deducción de cantidad alguna que la convierta en injusta o no compensativa;

(3) porque de ser aplicable a esta transacción lo dispuesto en el artículo 1344 del citado Código, dicho artículo no la autoriza a seleccionar el notario ni a cobrar los honorarios de éste, porque lo primero compete al vendedor y lo segundo al notario autorizante.

Prescribiendo el inciso 12 del decreto que este Tribunal retendrá jurisdicción de la causa para dictar cualquier ulterior orden u órdenes que fueren necesarias, las dos partes nos sometieron la cuestión en controversia, interviniendo además *amicus curiae*.

█ La primera cuestión a resolver es a cuál de las dos partes en un contrato de compraventa corresponde la elección del notario.

Nuestras leyes no contienen disposición alguna que determine a cuál de las partes en el contrato de compraventa corresponde ese derecho. Pero como dice Laurent: "Rehusar juzgar cuando la ley no es clara y precisa, sería realmente negar la justicia, y esto es introducir el desorden en la sociedad." A igual resultado conduciría, en casos civiles, desde luego, rehusar juzgar cuando no exista ley aplicable al caso. A remediar esa situación va encaminado el artículo 7 de nuestro Código Civil, que prescribe:

"Artículo 7.—El tribunal que rehuse fallar a pretexto de silencio, obscuridad o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad.

"Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos."[1]

Es digno de notarse que el segundo párrafo del precepto legal transcrito difiere del correspondiente en el artículo 6 del Código Civil español, que dice:

---

[1] En Argentina esta cuestión está regulada por el artículo 16 del Código Civil que dice así:

"Si una cuestión civil no puede resolverse, ni por las palabras, ni por el espíritu de la ley, se atenderá a los principios de leyes análogas; y si aun la cuestión fuere dudosa, se resolverá por los principios generales del derecho, teniendo· en consideración las circunstancias del caso."

"Cuando no haya ley exactamente aplicable al punto controvertido, se aplicará la costumbre del lugar, y, en su defecto, los principios generales del Derecho.''"

El Código español, en defecto de ley exactamente aplicable, suministra al juez sólo dos fuentes de donde suplirla: la costumbre del lugar, en primer término, y solamente en defecto de ésta, los principios generales del Derecho. En cambio, nuestro Código introduce una novedad al prescribir que en defecto de ley aplicable al caso, el juez resolverá teniendo en cuenta la razón natural de acuerdo con los principios generales de derecho, y los usos y costumbres aceptados y establecidos. Al conjunto de esos tres elementos nuestro Código denomina "equidad". La discreción del juez puertorriqueño es sin duda más amplia que la del juez español, obligado como está este último a aplicar sin otras consideraciones la costumbre del lugar y sólo en defecto de ésta, los principios generales del Derecho. Estos principios, según ha resuelto el Tribunal Supremo de España, los constituyen la jurisprudencia de dicho tribunal o los que puedan hallarse en los viejos códigos españoles, prohibiéndose al juez aplicar principios de otros sistemas de Derecho, no importa lo correcto y justo que éstos puedan ser. A este efecto dice F. Clemente de Diego, en su reciente obra "Instituciones de Derecho Civil Español", tomo 1, pág. 100:

"El legislador español, a nuestro entender, al invocar los principios de Derecho, pensó en los del Derecho español, en aquéllos que ya aprovechó al formular las reglas del Código, y que no por eso quedaron agotados. Por eso, siguiendo el ejemplo del legislador italiano, no dijo 'principio de derecho natural', como el austriaco, sino sólo 'principios generales de derecho'.''

Pero como el legislador puertorriqueño estimó conveniente modificar el segundo párrafo del artículo 6 del Código español, variándolo en la forma que hemos expuesto, no estamos obligados a seguir la interpretación que el Tribunal Supremo de España y los comentaristas de aquel Código han dado al citado párrafo. Sin menospreciar el caudal de

sabiduría que atesoran los códigos españoles, estamos en libertad de acudir también a sanos principios que, aunque de otros sistemas de Derecho, sin destruir las líneas del edificio legal sean aplicables a las condiciones locales actuales y no estén en conflicto con las leyes existentes. Así lo ha venido haciendo este Tribunal y lo ha hecho también el Tribunal Supremo de Filipinas, a pesar de que allí se adoptó literalmente el Código Civil Español. *Estados Unidos* v. *Cuna,* 12 Jur. Fil. 241, 247; *Arnedo* v. *Llorente y Liongson,* 18 Jur. Fil. 257.

Con respecto a "la costumbre del lugar", ha dicho el Tribunal Supremo de España que para que pueda ser aplicada en defecto de ley escrita, es necesario que se halle legalmente acreditada, sin que baste suponerla existente, desde luego, sin prueba alguna. A este efecto dice F Clemente de Diego, en su obra citada, tomo 1, págs. 96–97, que desde la época de los glosadores se consideró que la costumbre era un simple hecho y como tal era menester que fuese probada ante el juez por aquél que la invocaba, y cita las Sentencias del Tribunal Supremo de España de 8 de octubre de 1877 (37 J. C. 451) 29 de enero (J. C.) y 26 de junio de 1899 (87 J. C. 572) y 8 de noviembre de 1911. También Manresa cree que ésa es la doctrina más acertada. 1 Comentarios al Código Civil Español, 78. El Tribunal Supremo de Filipinas la aplicó en el caso de *Patriarca* v. *Orate,* 7 Jur. Fil. 404. La misma regla prevalece en la Ley Común. *Unkovich et al.* v. *New York Cent. R. Co. et al.* (N. J., 1934) 16 Atl. (2d) 558.

En el presente caso, "los usos y costumbres" no han sido probados. En tal virtud debemos descartar ese elemento a los efectos de formular el principio aplicable a este caso. Acudamos, pues, a la razón natural de acuerdo con los principios generales de Derecho.

Es indudable que el vendedor y el comprador tienen interés en la elección del notario; pero a poco que reflexionemos sobre la cuestión, nos daremos cuenta de que el grado

de interés del comprador necesariamente es mayor que el del vendedor. Éste recibe del comprador el precio en moneda legal. El otro, el comprador, si bien como cuestión de hecho recibe la posesión material de la cosa comprada, el título de propiedad sobre ella puede, por ignorancia, negligencia o malicia del notario autorizante, estar viciado de nulidad en todo o en parte, y como consecuencia de ese vicio no recibir en realidad aquello por lo que legítimamente pagó su dinero. En Argentina, cuyo código civil, como el español y el nuestro, guarda silencio sobre la cuestión que nos ocupa, se ha establecido por interpretación judicial que es al comprador y no al vendedor a quien incumbe designar el escribano que autorice la escritura. Tan respetable se considera ese derecho del comprador, que se ha resuelto que aunque en los avisos de remate se haya señalado un escribano, es el comprador quien tiene derecho a designar el que deba autorizar la escritura. Código Civil de Argentina, anotado por el Dr. Daniel Antokoletz, tomo 1, pág. 412.

A nuestro juicio, de acuerdo con la "equidad", debemos resolver que salvo pacto en contrario y mientras no se demuestre la existencia de usos y costumbres en distinto sentido, es el comprador y no el vendedor quien tiene derecho a elegir el notario.(2)

■■ Si como acabamos de resolver, es la Autoridad de Tierras de Puerto Rico, como compradora, la que tiene de-

---

(2) F. Clemente de Diego, en su obra y tomo citados, dice, a la página 103:

"Ahora bien: como en éstas (se refiere a la ley y a la costumbre) se encuentran lagunas que de algún modo tienen que ser suplidas, y los principios generales a los que hay que acudir en defecto de ley y de costumbre no están formulados y es menester aducirlos y formularlos, *en tales supuestos la actividad de los Tribunales está muy cerca de la producción jurídica y casi se asimila la jurisprudencia a las fuentes formales y directas del Derecho.* Así, el fallo de los Tribunales podrá engendrar nuevas formaciones de Derecho o por la vía consuetudinaria o influyendo sobre el legislador para que recoja su doctrina en las leyes." (Paréntesis y bastardillas nuestros.)

Compárese el pensamiento del jurista español con el del Juez Holmes al decir en su opinión disidente emitida en *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 221:

"Reconozco sin vacilación que los jueces legislan, y es su deber legislar. pero sólo pueden hacerlo para llenar vacíos (*interstitially*);...."

recho a elegir "el notario en este caso, ¿existe impedimento legal alguno para que pueda dicha agencia gubernativa exigir que la escritura sea autorizada por uno de sus abogados legalmente calificados para ejercer la profesión notarial? En Puerto Rico, el notariado es una profesión. Así lo califica nuestra Ley Notarial (³)   En efecto, nuestros notarios no reciben nombramiento alguno. Para ejercer les basta ser admitidos a postular como abogados por este Tribunal y cumplir los requisitos prescritos por las secciones 2 y 5 de la Ley Notarial. Como los abogados, pueden ejercer en toda la Isla; su número es ilimitado—es decir, igual al de los abogados admitidos a postular que cumplen los indicados requisitos—, y al cesar en el ejercicio por muerte o por cualquier otro motivo, no se crea ninguna vacante que deba ser cubierta por un poder nominador. Podrá argüirse que el notario de Puerto Rico al dar autenticidad a los contratos y demás actos extrajudiciales, y al autorizar las declaraciones juradas, ejerce una función pública. Así es en verdad, pero el mero hecho de ejercer una función pública y prestar el juramento que le exige la ley no lo convierte por ello en un funcionario público. También los miembros del Gran Jurado ejercen una función pública y prestan el juramento de rigor, y sin embargo, a pesar de la reconocida función pública que desempeñan, se ha resuelto en distintas jurisdicciones que no son funcionarios públicos. *State* v. *Graham,* 60 S. E. 431; *State* v. *Bradley,* 48 Conn. 535; *McDuffie* v. *Perkerson,* 91 A.L.R. 1002. El hecho de que el notario preste una fianza para garantizar sus funciones, tampoco implica

---

(³) La sección 2 de la Ley para Regular el Ejercicio de la Profesión Notarial de Puerto Rico en lo pertinente dice:

"Sección 2.—Además de los que hoy ejercen en esta Isla *la profesión Notarial* y de los que hasta hoy han obtenido título librado por la Corte Suprema de Puerto Rico, sólo podrán en lo sucesivo ejercer *dicha profesión,* los Abogados que hayan sido admitidos a practicar como tales ante las Cortes de Justicia por la dicha Corte Suprema y hayan prestado una fianza a favor de El Pueblo de Puerto Rico, por la suma de dos mil quinientos dólares, para responder del buen desempeño de su cargo."

que sea un funcionario público, pues como dice Fernández Casado en su "Tratado de Notaría", al conceder el Estado al documento notarial el carácter de fehaciente, tiene el perfecto derecho de tomar las medidas convenientes que sirvan de garantía a los otorgantes.

La Ley Notarial que rigió en esta Isla hasta que fué derogado por la vigente "Ley para Regular el Ejercicio de la Profesión Notarial de Puerto Rico", de 8 de marzo de 1906 (Leyes de 1906, pág. 141; Comp. 1911, §§1979–2020), era la misma ley española "Sobre Constitución del Notariado", de 28 de mayo de 1862 que con leves alteraciones se hizo extensiva a Cuba y Puerto Rico el 29 de octubre de 1873. De conformidad con la citada ley española, los notarios eran de nombramiento real (art. 11); se proveían por oposición ante las Audiencias, que proponían al gobierno los tres opositores que creyesen más beneméritos (art. 12); debían prestar fianza (art. 14); juraban obediencia y fidelidad al Rey, guardar la constitución y las leyes, y cumplir bien y lealmente su cargo (art. 15); era incompatible el ejercicio del notariado con cualquier otro cargo que devengara sueldo de los presupuestos generales, provinciales o municipales (art. 16), y por último prescribía el artículo 3 que cada partido judicial constituiría un distrito de notariado dentro del cual se crearían *tantas notarías cuantas se estimasen necesarias* para el servicio público, tomando en cuenta la población, la frecuencia y facilidad en las transacciones, etc.

No obstante concurrir en el notario español todos los elementos esenciales para calificarlo como funcionario público dentro de nuestras leyes vigentes, bajo las españolas tenía el concepto de un profesional, no de un funcionario público. Así lo sostienen el tratadista español Miguel Fernández Casado en su citada obra, tomo 1, páginas 23–24, y el Sr. Ruiz Gómez, citado con aprobación por el primero en la página 143 de la obra indicada.

El notario en los Estados Unidos con razón está calificado como un funcionario público. Allí la creación del cargo

(*office*), el procedimiento para nombrarlo, el número de notarios para cada condado, la demarcación territorial dentro de la cual pueden ejercer, la duración del cargo, las vacantes y forma de cubrirlas, y las facultades del funcionario, están prescritas por ley. Véanse *Thompson's Laws of New York,* 1939, Parte I, páginas 1016–1017; Deering, *Political Code of California,* 1937, secciones 791–801; 4 Dart, *Louisiana General Statutes,* secciones 6285 *et seq.*

Siendo el notario un profesional en Puerto Rico, su posición como empleado de la Autoridad de Tierras es la misma que la de cualquier otro técnico de dicha agencia gubernativa, y no conocemos ley alguna que expresa o tácitamente prohiba a la Autoridad de Tierras designar a uno de sus abogados, que a la vez sea notario, para que redacte y autorice la escritura. Por el contrario, la Ley de Tierras de Puerto Rico (Leyes de 1941, pág. 401), bajo el epígrafe "Poderes y Facultades Generales de la Autoridad", en su sección 8(*p*) le confiere, entre otros, los siguientes:

"Nombrar aquellos funcionarios, agentes y empleados y conferirles aquellas facultades, *imponerles aquellos deberes y* fijarles, cambiarles y pagarles aquella compensación por sus servicios que la Autoridad determine." (Bastardillas nuestras.)

De conformidad con el precepto legal transcrito, la Autoridad puede imponer a cualquiera de sus funcionarios legalmente capacitados para ello, como parte de sus deberes oficiales, el de redactar y autorizar durante las horas laborables aquellos instrumentos públicos en que estuviere legalmente interesada.

¿En quién puede la Autoridad de Tierras tener más confianza que en sus propios funcionarios o empleados, especialmente cuando se trata de una transacción que envuelve una cantidad mayor de $1,000,000? Es cierto que este Tribunal ha sostenido que es inmoral y contrario a la ley que un funcionario público ejerza en su propio beneficio la profesión de abogado durante las horas laborables que legalmente está obligado a dedicar por entero al desempeño del

cargo oficial que ocupa. *Rodríguez* v. *Mudafor,* 50 D P.R. 856. Cierto también es que esa prohibición se aplica igualmente a un notario que a cualquier otro profesional en idénticas circunstancias. Pero el caso que nos ocupa es distinto. Aquí el trabajo lo verifica el notario por orden y en beneficio de la Autoridad de Tierras, de quien recibe un sueldo como empleado o funcionario.

■ Es verdad que la sección 39 de la "Ley para Regular el Ejercicio de la Profesión Notarial en Puerto Rico" contiene un arancel que fija la compensación que un notario puede percibir por sus servicios. Las cantidades así fijadas no constituyen un derecho (*fee*) que pertenezca al Estado, del cual no pueda éste ser privado. Tampoco pueden conceptuarse como el salario de un funcionario público del cual no pueda dicho funcionario ser privado, pues como hemos visto, el notario de Puerto Rico no es un funcionario público y sí un profesional. El arancel sólo fija la compensación que puede cobrar un notario por sus servicios. Pero el notario que se propone utilizar el Director Ejecutivo de la Autoridad de Tierras es uno de los funcionarios o empleados de dicha agencia gubernativa, entre cuyos deberes, por disposición de dicho Director Ejecutivo, se halla el de redactar y autorizar durante horas de oficina, aquellos documentos públicos que formalicen transacciones en que sea parte o estuviere legalmente interesada la Autoridad. En compensación de sus deberes dicho funcionario percibe el sueldo fijádole por la Autoridad, y, claro está, no puede legalmente percibir compensación adicional, como no podría percibirla cualquiera otro de los abogados de dicha agencia a quien se le encomendase el estudio de cualquier cuestión legal en que la Autoridad estuviese legalmente interesada. Véase por analogía *Coggeshall* v. *Conner,* 39 L.R.A. (N. S.) 81.

El caso de *Wilcox* v. *Banco Popular* (C.C.A. 1918) 255 Fed. 442, no es de aplicación. Allí se declaró nula una escritura de hipoteca otorgada a favor del Banco ante un notario que era presidente y a la vez un importante accionista de

la institución bancaria. Se fundó la decisión en que el notario tenía un interés material en la transacción, que lo descalificaba para actuar como tal. En realidad el notario y el Banco estaban tan identificados en interés que virtualmente eran la misma persona. Pero en el presente caso el funcionario de la Autoridad de Tierras no tiene interés material alguno en las transacciones que en cumplimiento de los fines para los que fué creada, lleve a cabo dicha agencia gubernativa.

■■ Establecido que el notario en el presente caso no tiene derecho a cobrar honorarios por dicho trabajo notarial por ser un funcionario o empleado de la Autoridad de Tierras, fácilmente se comprenderá que no puede cederlos a la Autoridad, pues nadie puede ceder lo que no le pertenece. Tampoco puede la Autoridad subrogarse en los derechos del notario, porque es legalmente imposible subrogarse en derechos que no existen. Por consiguiente, al exigir la Autoridad de Tierras el pago de dichos honorarios, necesariamente tiene que reclamarlos por su propio derecho y en ninguna forma como un derecho adquirido del notario. Pero es claro, a nuestro juicio, que la Autoridad de Tierras no puede por su propio derecho percibir esos honorarios. Ello equivaldría a reconocer en dicha agencia gubernativa el derecho a ejercer la profesión notarial, con manifiesta infracción de la sección 2 de la Ley para regular el ejercicio de la Profesión Notarial en Puerto Rico. Véanse las monografías en 73 A.L.R. 1327 y 105 A.L.R. 1364.

■ Además, es sabido que los funcionarios y agencias del gobierno no pueden cobrar al público otros derechos u honorarios que no sean los prescritos por la ley. En Puerto Rico no existe, que sepamos, precepto legal alguno que autorice a la Autoridad de Tierras a cobrar honorarios por servicios de la índole de los que nos ocupan. Pero en el supuesto de que la ausencia de una prohibición legal a ese efecto pudiese interpretarse como que equivalía a conceder la facultad de cobrarlos, aun así, no podría ella exigirlos en ausencia de una autorización expresa o implícita para cobrar esta clase

determinada de honorarios, por impedirlo, como hemos notado, la vigente Ley Notarial.

Por lo expuesto, procede declarar:

(1) que la Autoridad de Tierras de Puerto Rico, como compradora, tiene derecho en este caso a elegir el notario que autorice la escritura de compraventa, pudiendo ser dicho notario uno de los empleados o funcionarios de la citada Autoridad; y

(2) que ni el notario así elegido dentro de los funcionarios o empleados de la Autoridad, ni la propia Autoridad, podrán cobrar honorarios por dicho trabajo notarial.

Opinión disidente del JUEZ ASOCIADO SR. SNYDER.

Concurro con la opinión y resolución del Tribunal en este caso, con la excepción de que en mi opinión los honorarios percibidos por un notario en el desempeño de sus deberes como un funcionario o empleado de la Autoridad de Tierras deben ingresar en los fondos generales de la Autoridad. No me impresiona el argumento de que ninguna ley autoriza expresamente el cobro de estos honorarios. En este caso hemos resuelto que, al desempeñar las funciones descritas en la opinión de la mayoría, el notario en cuestión estaría actuando propiamente como un notario. Habiendo decidido esto, no puedo ver cómo podemos limitarnos a decir que, aunque tal empleado está actuando correctamente bajo la ley que reglamenta a los notarios, los honorarios que debe recibir, aun cuando no los ha renunciado, no puedan ser percibidos. Estoy presto a convenir que el notario, a quien se le paga un sueldo como funcionario o empleado público, no puede percibir estos honorarios en adición a su sueldo (*Rodríguez* v. *Mudafor,* 50 D.P.R. 856). Pero nada encuentro en la ley que nos exija conceder al vendedor de terrenos a la Autoridad el beneficio (*windfall*) de no pagar los honorarios fijados por ley en relación con una transacción de esta índole.

Considero altamente significativo el hecho de que estos son honorarios que una persona que vende a una entidad privada estaría claramente obligada a pagar y que, en tér-

minos generales, simplemente reintegran a la Autoridad los salarios pagados a los notarios por tales servicios.

Se ha atacado como inmoral la práctica de ingresar tales honorarios en los fondos públicos. No veo tal inmoralidad. Los abogados afirmaron, sin contradicción, que ésta es la práctica general en las muchas adquisiciones de tierras en Puerto Rico por diversas agencias federales. Los derechos de los registradores, que hemos resuelto son derechos por servicios rendidos, y no contribuciones (*R. F. C. Mortgage Co.* v. *Registrador,* 60 D.P.R. 235), son, por virtud de ley, ingresados en la tesorería insular. De la misma manera, los derechos cobrados a litigantes por los secretarios de las cortes federales y los fiscales de los Estados Unidos son reintegrados por estos funcionarios a la tesorería pública (Título 28, U.S.C.A., Sec. 541 y siguientes). Por tanto el argumento se reduce a manifestar que la inmoralidad surge, no del cobro por el Gobierno de los honorarios propiamente dichos, si que de la ausencia de una disposición específica de ley para ello. La opinión de la mayoría contiene una excelente discusión de la necesidad de que las cortes decidan cuestiones no comprendidas en la ley. Convengo enteramente con este principio y lo creo de aplicación al problema que discutimos, pero en cuanto a mí las equidades en este caso favorecen claramente a la Autoridad. Por tanto creo que si debemos legislar judicialmente en este caso, debemos asumir la actitud de que los honorarios deben cobrarse por la Autoridad toda vez que no lo prohíbe ninguna ley en vez de decidir, como decide la mayoría, que no existe estatuto alguno que autorice tal práctica.

Mi opinión sincera es que toda vez que este asunto se suscita expresamente por vez primera, los vendedores de terrenos a agencias gubernamentales insistirán en el futuro que el asunto se convenga expresamente en el contrato. Sin embargo, la decisión de la mayoría impide al Gobierno emplear este argumento, el cual con todo derecho podían emplear en el pasado, como parte de su poder de negociación,

para insistir bien que los honorarios se pagasen y se ingresasen a la tesorería pública o, en caso de que se renunciara a los mismos, que tal renuncia se reflejara en el precio de venta del terreno.

Las cifras que nos fueron presentadas al efecto de que algunos pequeños vendedores de terrenos a la Puerto Rico Reconstruction Administration fueron obligados a pagar por honorarios, el diez por ciento del valor del terreno vendido, muy bien pudieron ser una carga onerosa sobre tales vendedores, pero no encuentro razón por la cual cualquier agencia gubernamental no pueda como parte de su poder de contratación renunciar todo o parte de tales honorarios. Por otro lado insistir que tal renuncia debe prevalecer inexorablemente en cada caso como cuestión de derecho, resultaría en casi todos los casos, como en el presente, solamente en beneficio (*windfall*) del vendedor.

Se nos ha llamado la atención en el curso del argumento hacia el hecho de que nuestra decisión en este caso podría tener algún efecto sobre los honorarios de notarios que rinden servicios similares a base de un sueldo para instituciones privadas o bufetes. Tal como interpreto la opinión de la mayoría, dicho asunto se deja pendiente. No expongo mi opinión sobre el mismo ya que no creo está envuelto en el presente caso.