*In re* SALVADOR RIBAS DOMINICCI, ERNESTINA RODRÍGUEZ RODRÍGUEZ, JORGE E. CASTRO JIMÉNEZ, ENRIQUE PESQUERA COBIÁN, JUAN E. NÁTER SANTANA y JOSÉ ANTONIO GARCÍA ORTIZ.

*Números:* MC-89-39      *Resueltos:* 31 de agosto de 1992
         MC-88-40

492

*Nora L. Rodríguez Matías, Carmen I. Navas, Elizabeth Álvarez de Barbosa, Carmen Cintrón Ferrer, Evelyn Benvenutti Toro, Israel Pacheco Acevedo, José Aníbal Ortiz Lozada,* del Colegio de Abogados de Puerto Rico.

PER CURIAM: Hoy decretamos la suspensión indefinida de varios abogados notarios que adeudan el pago de la prima por concepto de fianza notarial y que han ignorado nuestros requerimientos en relación con el pago de la misma. Tomando en consideración el craso incumplimiento con la

disposición de la Ley Notarial de Puerto Rico que le requiere una fianza a todo notario practicante y la rutinaria norma de que hacer caso omiso a las resoluciones de este Tribunal trae consigo sanciones disciplinarias severas, se decreta la suspensión indefinida del ejercicio de la abogacía y de la notaría a los abogados notarios siguientes:

Salvador Ribas Dominicci
Ernestina Rodríguez Rodríguez
Jorge E. Castro Jiménez
Enrique Pesquera Cobián
Juan E. Náter Santana
José Antonio García Ortiz

Veamos los hechos y el trámite procesal que justifican estas suspensiones.

I

Mediante una serie de mociones informativas, el Colegio de Abogados de Puerto Rico (en adelante Colegio) nos puso sobre aviso de que las primas de fianza notarial de una infinidad de notarios se encontraban al descubierto porque no habían sido satisfechas por los notarios fiados. Las referidas mociones fueron notificadas a los abogados notarios concernidos.

Muchos de los abogados a quienes se les notificó la deficiencia en el pago de la prima de la fianza notarial satisficieron la deuda inmediatamente. Según los notarios cumplían con lo requerido para renovar la fianza notarial, fuimos notificados por el Colegio, mediante varias mociones informativas, de los nombres de los notarios y de las fechas en que habían cumplido. Sin embargo, un gran número de notarios nada hicieron ante este esfuerzo inicial del Colegio por lograr el pago de las fianzas antes aludidas.

Por ser tan dinámica y cambiante la composición del grupo de notarios incumplidores, el 3 de junio de 1992 con-

cedimos diez (10) días al Colegio para que compareciera por escrito y nos informara "si la lista de notarios que a continuación [detallamos] es una correcta y completa de quienes no han cumplido con su obligación de ley de pagar su fianza notarial".[1]

Poco tiempo después, el Colegio compareció mediante moción informativa, nos certificó cuáles eran los notarios que, en efecto, no habían pagado, añadió el nombre de un abogado que omitimos en la lista y nos informó que cuatro (4) de los abogados enumerados habían pagado. Sin embargo, el Colegio nos informó que los pagos fueron devueltos por tratarse de notarios que tenían más de dos (2) años de atraso y que, por lo tanto, la Junta Administrativa del Fondo de Fianza Notarial requería:

> 1. Una declaración jurada expresando si tiene queja o querella pendiente ante los organismos que regulan la conducta profesional del abogado.
> 2. Que la Oficina de inspección de notarios acredite si la obra notarial de dichos notarios tiene deficiencias en el período al descubierto.

Una vez aclarado por el Colegio (mediante varias mociones informativas) cuáles eran los notarios que al 19 de junio de 1992 no habían pagado su fianza notarial, en esa fecha emitimos una resolución concediéndole veinte (20) días para que acreditaran su cumplimiento con la obligación impuesta por la Ley Notarial de Puerto Rico. Simultáneamente, requerimos de éstos que mostraran causa por la cual no debían ser suspendidos del ejercicio de la notaría y les apercibimos que su incumplimiento con la resolución emitida conllevaría la suspensión automática del ejercicio de la notaría, *y posibles sanciones disciplinarias adicionales*, a la luz de nuestros pronunciamientos en *In re Pagán Ayala*, 115 D.P.R. 814 (1984).

Después de dicha resolución, el Colegio compareció nue-

---

[1] Cabe señalar que dicha resolución se refería a todos los notarios que tenían su fianza notarial al descubierto. Se incluyeron tanto los del recurso MC-88-40 como los del MC-89-39.

vamente mediante Moción Informativa para ponernos al tanto del desarrollo acaecido después de nuestra Resolución de 19 de junio de 1992. Según dicho escrito, veinticinco (25) de los sesenta y tres (63) abogados apercibidos habían comenzado a realizar gestiones para cumplir con los requisitos establecidos por la Junta de Fianza Notarial y catorce (14) de ellos habían cumplido cabalmente. Los restantes veinticuatro (24) abogados nada habían hecho, pero dos (2) de ellos se encontraban en trámites de renunciar a la notaría.

Con esta información, el 17 de julio de 1992 emitimos una segunda resolución. En ésta, le concedimos un término final e improrrogable de diez (10) días a los notarios que no habían realizado trámite alguno en el pago de sus primas y en relación con nuestra resolución anterior. Esta vez, le apercibimos que su incumplimiento con los términos de esta última resolución *conllevaría la suspensión automática del ejercicio de la abogacía. In re Pagán Ayala,* supra. Ordenamos su notificación personal a través de la Oficina del Alguacil General.([2])

Una vez recibieron esta notificación, casi todos los notarios pagaron su deuda por concepto de fianza notarial y comparecieron ante esta Curia en cumplimiento con nuestras resoluciones. No obstante, un grupo pequeño de abogados no ha contestado nuestros requerimientos.

## II

■ El requisito de fianza notarial emana de la Ley Notarial de Puerto Rico. Esta dispone en su Art. 7 (4 L.P.R.A. sec. 2011) que:

---

([2]) Según la Regla 8(j) del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A: "Todo abogado notificará al Secretario todo cambio en su dirección postal." Las dificultades enfrentadas por el señor Alguacil General para localizar a estos abogados es indicativo de que esta regla no es cumplida estrictamente. Es necesario que todo abogado dé fiel cumplimiento a la misma, puesto que es indispensable que este Tribunal pueda localizarle cuando sea necesario, sin tener que hacer una peregrinación que consume tiempo, energías y recursos humanos.

> Ninguna persona autorizada para practicar la profesión notarial en Puerto Rico podrá ejercerla sin tener prestada y vigente una fianza por una suma no menor de quince mil (15,000) dólares para responder del buen desempeño de las funciones de su cargo y de los daños y perjuicios que por acción u omisión cause en el ejercicio de su ministerio.

■ El referido requisito de fianza notarial es de antiquísima estirpe en Puerto Rico. Aun en la época en que los notarios eran nombrados por el Rey de España y se les requería ser de estado seglar, haber cumplido los veinticinco (25) años de edad y ser de buenas costumbres, la fianza era un requisito para el ejercicio del notariado. Posteriormente, con la aprobación de la Ley Notarial de 8 de marzo de 1906, la cual compendiaba el derecho notarial vigente en Puerto Rico y Cuba en aquel momento, el requisito quedó inalterado. Véanse: P. Malavet Vega, *El Notariado Puertorriqueño*, ponencia ofrecida en la II Jornada Notarial de Norte, Centroamérica y el Caribe, 1985, pág. 32; *Pueblo v. Central Cambalache*, 62 D.P.R. 553 (1943).

■ Igual ocurrió con la siguiente legislación notarial en Puerto Rico. La Sec. 2 de la Ley Notarial de 1956, Ley Núm. 99 de 27 de junio de 1956 (4 L.P.R.A. ant. sec. 1002), derogada por nuestra actual ley notarial, disponía para una fianza de dos mil quinientos dólares ($2,500). Sin embargo, y parcialmente como consecuencia de una Resolución donde manifestamos que "compartimos la preocupación de que la cuantía de $2, 500 exigida en la actualidad es insuficiente", la Asamblea Legislativa aumentó mediante la Ley Núm. 118 de 12 de julio de 1986 a quince mil dólares ($15,000) la fianza que debía prestar un notario para garantizar el buen desempeño de sus funciones en vista de que la anterior cantidad, o sea dos mil quinientos

dólares ($2,500), había sido la exigida durante los últimos ochenta (80) años.[3]

■ Mediante la aprobación de la vigente legislación notarial el 2 de julio de 1987, se mantuvo vigente tanto el requisito de fianza notarial como la nueva cantidad establecida en 1986. Esta provee varios mecanismos alternos para el afianzamiento. La fianza puede ser hipotecaria, prestada por una compañía de seguros o por el Colegio. De ser la fianza provista por el Colegio, las primas pagadas a dicha institución pasarán a formar parte del Fondo Especial de Fianza Notarial cuyas funciones y propósitos están regulados por la propia Ley Notarial de Puerto Rico en su Art. 79 (4 L.P.R.A. sec. 2141). De ser hipotecaria la fianza obtenida por el notario, la misma tendrá que cumplir estrictamente con lo establecido por este Tribunal en fianzas hipotecarias para garantizar el buen desempeño de las funciones notariales y de los daños y perjuicios que por acción u omisión se causen en el ejercicio ministerial de la notaría (Resolución de 2 de junio de 1988) y deberá, además, contar con nuestra aprobación. *In re Fianzas Hipotecarias*, 121 D.P.R. 534 (1988).

■ El propósito de la fianza notarial y su importancia resultan evidentes: *responde por los daños y perjuicios que cause un notario en sus funciones o por el incumplimiento de sus deberes ministeriales como la cancelación de sellos.* No obstante estar limitada a quince mil dólares ($15,000) la cuantía de la fianza, las personas afectadas podrán reclamar una suma mayor, si los daños fuesen mayores. Bajo ninguna circunstancia queda menoscabado el derecho de una parte afectada por la negligencia o incompetencia de un notario a reclamar por una suma que exceda los quince mil dólares ($15,000) garantizados mediante la fianza.

---

[3] Dicha ley creó, además, un fondo especial por concepto de fianza notarial de las cantidades que recaude el Colegio de Abogados por la prestación de esa garantía. Dicho concepto fue recogido por la nueva legislación notarial de 1987.

Véanse: P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 30; Art. 7 de la Ley Notarial de Puerto Rico, *supra*.

■ Esta fianza responde preferentemente por los sellos de rentas internas o notariales y por los gastos necesarios para proteger el Protocolo del notario. Cabe señalar que si por alguna razón parte de la fianza es adjudicada en una reclamación, el notario no podrá continuar ejerciendo la profesión hasta que restituya la porción de la fianza que se ha deducido.

### III

Como en múltiples instancias del notariado puertorriqueño, el incumplimiento de la obligación de pagar las primas de la fianza notarial ha requerido la intervención disciplinaria de este Tribunal. A modo de ejemplo, la conducta del licenciado Pagani en *In re Pagani Rodríguez*, 109 D.P.R. 831 (1980), mereció que lo colocáramos "en el umbral de la incapacidad para actuar en tan delicado y puntilloso ministerio" especialmente por su obstinado incumplimiento con el requisito de fianza notarial.

Los abogados que se cruzan de brazos ante los requerimientos de este Tribunal para que comparezcan a explicar por qué no han renovado su fianza notarial, han sido suspendidos indefinidamente del ejercicio del notariado y de la abogacía. La trillada regla que ha utilizado este Tribunal en decenas de casos a los efectos de que merece ser suspendido un abogado que inexplicablemente se niega a atender los requerimientos de este Tribunal en su esfera disciplinaria, ha sido aplicada a casos (como el de autos) que tienen su origen en el incumplimiento de la obligación de pagar la fianza notarial. Véase, a modo de ejemplo, *In re Montalvo Cruz*, 118 D.P.R. 104 (1986).

■ La razón para que esta norma sea extensiva a situaciones donde la fianza notarial de un notario practi-

cante está sin pagar es evidente. Un notario que no cuenta con la protección que ofrece la fianza constituye un peligro, no sólo para el tráfico jurídico de los bienes inmuebles sino para las personas que a diario utilizan sus servicios en Puerto Rico. Además, el no hacer gestiones para renovar la fianza notarial constituye una falta de respeto a este Foro. *In re Díaz García*, 104 D.P.R. 171 (1975).

Este Tribunal será estricto con los notarios que después de ser oportunamente notificados de su deficiencia en la fianza, hacen caso omiso a nuestras resoluciones. No estamos en disposición de tolerar esta clase de actitud por parte de los miembros de la profesión y en particular la de los notarios irresponsables que se niegan a reconocer la importancia de la fianza notarial.

## IV

Por razones que no alcanzamos comprender, ninguno de los notarios de epígrafe ha comparecido formalmente a mostrarnos causa para justificar la ausencia de pagos de la prima de la fianza.[4] Hemos concedido amplias oportunidades a estos letrados para comparecer ante esta Curia y *no lo han hecho*. No existe curso decisorio alterno. La seriedad de la conducta de los abogados que hoy suspendemos denota una severa indiferencia hacia la autoridad disciplinaria de este Foro y es evidencia de una actitud de

---

[4] En el caso particular del Lcdo. Jorge E. Castro Jiménez, el 28 de julio de 1992 el Colegio de Abogados nos informó que el notario pagó la deuda por concepto de fianza notarial. No obstante, el licenciado Castro Jiménez no ha comparecido ante este Tribunal para explicar su incumplimiento con el ordenamiento notarial.

En lo referente al Lcdo. Juan E. Náter Santana, éste compareció el 13 de julio de 1992 y se comprometió a poner al día su fianza notarial. Sin embargo, hasta la fecha no ha cumplido con este compromiso.

Finalmente, en cuanto al Lcdo. José Antonio García Ortiz, éste sometió una moción el 25 de agosto de 1992 en la que informó que presentó sus excusas ante el Colegio de Abogados de Puerto Rico. No obstante, en su comparecencia ante este Tribunal el abogado no explica su incumplimiento con la Resolución de 17 de julio de 1992.

total menosprecio al cumplimiento de los requisitos que impone pertenecer al notariado puertorriqueño. Simultáneamente, advertimos a los notarios que en el futuro este Tribunal implantará estrictamente las disposiciones del ordenamiento notarial, particularmente en lo referente al requisito de fianza notarial. Cualquier letrado que no renueve diligentemente la fianza notarial con el Colegio u otra compañía de seguro, se arriesga a que, con carácter inmediato, se suspenda del notariado.

Por los fundamentos previos, *se decreta la suspensión indefinida del ejercicio de la abogacía a los licenciados Salvador Ribas Dominicci, Ernestina Rodríguez Rodríguez, Jorge E. Castro Jiménez, Enrique Pesquera Cobián, Juan E. Náter Santana y José Antonio García Ortiz hasta tanto acrediten su disposición de cumplir rigurosamente con nuestras órdenes y con la Ley Notarial de 1987, y el Tribunal disponga lo que proceda en derecho. Se ordena al Alguacil General que con carácter prioritario se incaute de la obra notarial de estos abogados.*