*770 TEXTO COMPLETO DE LA SENTENCIA
El Colegio de Abogados solicita que revoquemos la sentencia del Tribunal de Primera Instancia, Sala de Fajardo en Humacao, mediante la cual le ordenó el desembolso de $20,000.00 como parte de la fianza que tenía el notario Raúl Yumet Breindenbach, en una reclamación en daños presentada en su contra.
Inconforme, el Colegio de Abogados acude ante nos alegando que incidió el tribunal de instancia al imponerle una obligación en exceso a la cubierta establecida en el contrato de fianza notarial, toda vez que ésta quedó extinguida al desembolsar el monto de la cubierta en otra sentencia dictada anteriormente de eventos de otro año, en otra reclamación contra el mismo notario.
Se confirma la sentencia apelada, por los siguientes fundamentos.
I
Los eventos que dan lugar al recurso comenzaron el 24 de marzo de 1995, cuando la sucesión de María Esther Resto Núñez presentó demanda ante el Tribunal de Primera Instancia, sobre nulidad de testamento contra Víctor Ortiz Lebrón, quien había sido nombrado único y universal heredero de la señora Resto Núñez en el testamento de ésta, caso civil número NAC95-0029. La demanda tenía como objeto anular la Escritura Pública Núm. Veinticinco de 17 de abril de 1991, sobre testamento abierto por haber comparecido como testigo instrumental una empleada del notario Raúl Yumet Breindembach.
El señor Ortiz Lebrón trajo como tercero demandado al notario Yumet Breindenbach, que ante sí se había otorgado el testamento, la sociedad legal de gananciales de la cual formaba parte, y al Colegio de Abogados de Puerto Rico, como fiadora del notario. El Colegio de Abogados aceptó que a tenor con el Fondo de Fianza Notarial, dicha institución venía obligada a responder por los daños alegados en virtud del contrato de fianza.
El Tribunal de Primera Instancia dictó sentencia sumaria parcial el 4 de febrero de 1997, declarando nula la escritura de otorgación de testamento debido al incumplimiento por parte del notario Yumet Breindenbach, con las formalidades legales requeridas en cuanto a testigos se refiere.
Posteriormente, el 3 de marzo de 1997, se presentó una segunda demanda contra el notario Yumet Breindenbach, caso civil número HDP97-0038. La misma fue instada por Efraín Vázquez Vázquez, Ramonita Vera y la sociedad legal de gananciales por ellos compuesta. En la misma, se reclamaba el cobro de dinero y daños y perjuicios, por no haber el notario demandado presentado al Registro de la Propiedad, la Escritura Pública Núm. Dieciséis, que se otorgó ante sí, el 23 de abril de 1988.
El Colegio de Abogados compareció aceptando ser el fiador del notario y que tenía expedida una fianza en vigor. Argumentó, sin embargo, que el máximo de la fianza por la cual respondería sería la suma de $20,000.00 por todas la distintas reclamaciones que aún pendían por razón de sus omisiones y negligencias como notario, incluyendo la adeudadas por otras reclamaciones.
Mediante sentencia de 23 de febrero de 1999, el tribunal de instancia declaró con lugar dicha demanda HDP-97-0038, por no haber presentado ante el Registro de la Propiedad, la Escritura Pública Núm. Dieciséis del 23 de abril de 1988 y condenó al Colegio de Abogados a pagar la suma hasta $20,000.00 a favor de los demandantes y al notario la cantidad de $44,710.19.
El tribunal de instancia emitió una segunda sentencia contra dicho notario el 4 de octubre de 1999 en el caso número NAC-95-0029, notificada el 22 de junio de 2000, declarando con lugar la demanda y la demanda *771 contra tercero y ordenando al Colegio de Abogados a pagar la suma máxima atribuible a ésta, por la cantidad de $20,000.00, por cuanto los daños ocasionados a la parte demandante en dicho caso, como resultado de la nulidad testamentaria, excedería la referida fianza. La diferencia entre los $20,000.00 y los $89,000.00 concedidos, respondería de ello el notario Yumet Breindenbach.
Inconforme, el Colegio de Abogados apela la sentencia alegando, en síntesis, que la fianza notarial sólo se limitará, sin importar el año en que se presente la reclamación u ocurran los hechos, a la cantidad máxima establecida en la fianza prestada. En la situación que surjan varias reclamaciones contra un mismo notario, inclusive sobre eventos ocurridos en distintos años, la fianza deberá cubrir a prorrata a todos los reclamantes y reclamaciones hasta el límite de la cubierta máxima.
II
Una vez resumidos los hechos que dan lugar al recurso apelativo, procedemos a comentar la norma jurídica que rige la controversia presentada.
Dispone el Art. 7 de la Ley de Notarial, Ley Núm. 75 de 2 de julio de 1987, que toda persona autorizada a practicar la profesión notarial en Puerto Rico, tendrá que prestar una fianza por una suma no menor de $15,000.00 para responder del buen desempeño de las funciones de su cargo y de los daños y perjuicios que por acción u omisión cause en el ejercicio de su ministerio. Prescribe dicho artículo que:

“La fianza deberá ser renovada anualmente y aprobada por el Tribunal Supremo de Puerto Rico, el que pasará sobre su suficiencia en cuanto a las hipotecarias, las cuales deberán inscribirse en el registro de la propiedad correspondiente, antes de su aprobación final.

Si en una reclamación judicial que se haga contra un notario, se adjudica al reclamante el todo o parte de la fianza, aquél no podrá seguir ejerciendo hasta tanto preste nueva fianza. ”

4 L.P.R.A. see. 2011.
De igual forma, el Reglamento Notarial establece que todo abogado admitido al ejercicio de la abogacía que hubiere aprobado la reválida sobre Derecho Notarial e interesare ejercer el notariado, presentará una solicitud en la Secretaría del Tribunal Supremo. Dicha solicitud debe estar acompañada de una fianza en duplicado, conforme los requisitos establecidos en el Art. 7 de la Ley Notarial de Puerto Rico. 4 L.P.R.A. Ap. XXTV.
La fianza puede ser hipotecaria o prestada por una compañía de seguros o por el Colegio de Abogados de Puerto Rico. De ser la fianza provista por el Colegio de Abogados, las primas pagadas a dicha institución pasarán a formar parte del Fondo Especial de Fianza Notarial, cuyas funciones y propósitos están regulados por la propia Ley Notarial en Art. 79, supra. De ser hipotecaria, la fianza obtenida por el notario, la misma tendrá que cumplir estrictamente con lo establecido en las fianzas hipotecarias. Art. 79, Ley Notarial, supra; 4 L.P.R.A. see. 2141; In re: Ribas Dominicci, 131 D.P.R. 491, 497 (1992).
El propósito de la fianza notarial y su importancia resultan evidentes, responde por los daños y perjuicios que cause un notario en sus funciones o por el incumplimiento de sus deberes ministeriales como la cancelación de sellos. No obstante estar limitada la cuantía de la fianza, las personas afectadas podrán reclamar una suma mayor, si los daños fuesen mayores. Bajo ninguna circunstancia, queda menoscabado el derecho de una parte afectada por la negligencia o incompetencia de un notario, a reclamar por una suma que exceda la cantidad garantizada mediante la fianza. La fianza es de tal importancia que el Tribunal Supremo ha dicho que un notario *772 que no cuenta con la protección que ofrece la fianza, constituye un peligro no sólo para el tráfico jurídico de los bienes inmuebles, sino para las personas que a diario utilizan sus servicios en Puerto Rico.
Id., págs. 497-499.
La fianza responde preferentemente por los sellos de rentas intemas o notariales y por los gastos necesarios para proteger el protocolo del notario. Es necesario el señalar que, si por alguna razón parte de la fianza es adjudicada en una reclamación, el notario no podrá continuar ejerciendo la profesión hasta que restituya la porción de la fianza que se ha deducido. Art. 7, Ley Notarial, supra.
B
Una vez discutidas las disposiciones sobre la fianza en la Ley Notarial, procedemos a comentar las normas generales del contrato de fianza dispuestos en el Código Civil.
Los contratos de garantía o afirmación de derechos son aquéllos que tienen por fin asegurar el cumplimiento de una o varias obligaciones principales o afirmar y esclarecer derechos que hayan sido controvertidos. Entre ellos se encuentra el contrato de fianza, el cual el Código Civil define en su artículo 1721 del siguiente modo, "íp]or la fianza se obliga uno a pagar o cumplir por un tercero en caso de no hacerlo éste. "31 L.P.R.A. see. 4871; GECC of P.R. v. Southern Transport, 132 D.P.R. 808, 813 (1993).
Lá citada definición comprende claramente las características distintivas de este contrato. Estas son: (1) obligación contraída por la fianza es accesoria y subsidaria; (2) es unilateral porque puede establecerse sin intervención del deudor, y aun del acreedor en cuyo favor se constituye; y (3) el fiador es persona distinta del fiado, porque nadie puede ser fiador personalmente de sí mismo. Caribe Lumber v. Inter-AM Builders, 101 D.P.R. 458, 467 (1973); GECC of P.R. v. Southern Transport, supra, págs. 813-814.
La vida de la fianza, por lo tanto, depende y está condicionada totalmente a que exista una obligación principal. Invalidada o desaparecida dicha obligación principal, la obligación del fiador no puede subsistir. Consecuencia de tal carácter accesorio es que la fianza no puede tener objeto distinto ni más extenso que el de la obligación principal. El fiador puede obligarse a menos, pero no a más que el obligado principalmente, tanto en la cantidad como en lo oneroso de las condiciones. Art. 1725, Código Civil, 31 L.P.R.A. see. 4875; GECC of P.R. v. Southern Transport, supra, pág. 814.
El comentarista Puig Peña ha definido la fianza como aquel contrato por cuya virtud una persona (denominada fiador) se obliga, frente al acreedor, de una determinada obligación, a garantizar el cumplimiento de la misma, para el caso de que éste no se reintegre del deudor principal. F. Puig Peña, Compendio de Derecho Civil Español, 3ra ed., Pamplona, Ed. Aranzadi, 1976, T. IV, pág. 336; Profesional Underwriters v. Distribuidora Automotriz, 121 D.P.R. 536, 542 (1988).
El Código Civil dispone que la fianza no se presume, debe ser expresa, y no puede extenderse a más de lo contenido en ella. Art. 1726 de Código Civil, 31 L.P.R.A. see. 4876; Goss v. Structural Concrete Prods., 92 D.P.R. 391, 393 (1965). Nuestro más aito foro ha abandonado la doctrina de la interpretación restrictiva del contrato de fianza, optando por una interpretación liberal o inclusiva. La interpretación restrictiva fue abandonada porque la misma tenía su fundamento en la práctica antes prevaleciente de que se afianzaba por mera liberalidad. Pero en la actualidad, las fianzas se prestan mediante el pago de primas, por lo cual no había porqué darle un trato preferente a los fiadores, interpretando la obligación asumida restrictivamente. Véase, Art. 1241, Código Civil, 31 L.P.R.A. see. 3479; Goss v. Structural Concrete Prods., 92 D.P.R. 391, 394 (1965); Mcpio. de San Juan v. Stadium & Coliseum, 113 D.P.R. 490, 494 (1982).
C
Comentados los aspectos específicos sobre el contrato de fianza, procedemos a analizarlo, a la luz de las *773 normas generales de los contratos.
El contrato sobre la fianza notarial en controversia dispone que:

“[ejl COLEGIO DE ABOGADOS DE PUERTO RICO, como FIADOR, nos obligamos solidariamente con el ESTADO LIBRE ASOCIADO DE PUERTO RICO y LAS PERSONAS NATURALES O JURIDICAS que corresponda, a pagar hasta un máximo de VEINTE MIL DOLARES ($20,000.00) en moneda de curso legal de los Estados Unidos de América, por concepto de los daños y perjuicios causados por acciones u omisiones del notario público arriba mencionado en el ejercicio de las funciones de dicho cargo... ”.

En nuestra jurisdicción rige el principio de la libertad de contratación. Al interpretar un contrato, tenemos que tomar en consideración que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Además, impera una regla de hermenéutica contractual que establece que, "/7/a interpretación de las cláusulas obscuras de un contrato no deberán favorecer a la parte que hubiese ocasionado la obscuridad". Art. 1233 y 1240, Código Civil, 31 L.P.R.A. sees. 3471 y 3478; CNA Cassualty v. Torres Díaz, opinión de 11 de junio de 1996, 96 J.T.S. 85, pág. 1246.
Es necesario que al interpretar un contrato tomemos sus cláusulas de manera integral y no aisladamente, buscando su verdadero sentido, atendiendo a la interpretación de unas cláusulas con relación a otras. Art. 1237, Código Civil, 31 L.P.R.A. see. 3475; Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 348 (1984); CNA Cassualty v. Torres Díaz, supra, pág. 1246.
Debemos enfatizar que en nuestra jurisdicción, el contrato de fianza no se considera un contrato de seguro, por lo cual no se incorporó al Código de Seguros y permaneció cubierto por el Código Civil, como figura jurídica independiente y separada del contrato de seguro. No obstante, se reconoce sus similitudes y que es muy difícil el establecer sus diferencias en cuanto a esos efectos. Caribe Lumber v. Inter-AM, supra, pág. 465.
III
Analizado el caso ante nuestra consideración bajo los principios de derechos antes esbozados, determinamos que no erró el tribunal de instancia al imponerle a la parte apelante el pago de la fianza por la cantidad de $20,000.00. Mediante la fianza notarial, el Colegio de Abogados se responsabiliza a pagar solidariamente junto al notario hasta un máximo de $20,000.00, por concepto, entre otros, de los daños y perjuicios causados por acciones u omisiones del notario público en el ejercicio de sus funciones como notario.
Según las disposiciones de la fianza notarial, ésta debe ser renovada anualmente, por lo que cubre y responde sobre actos u omisiones del año en que se presta. Esta es la razón de su renovación anual, pues ésta no puede extenderse ni tener cubierta por más tiempo para la cual fue prestada. De ahí que se requiera que si la fianza es adjudicada en una reclamación, el notario debe restituirla para continuar la práctica de la notaría.
No obstante, si las actuaciones u omisiones ocurrieron en diferentes años bajo fianzas diferentes, la fianza notarial viene obligada a cubrir la cantidad máxima de $20,000.00, por las actuaciones u omisiones, incluyéndose, los sellos de rentas internas y demás gastos dispuestos por ley, del año en que se imponga la responsabilidad, toda vez que las mismas estaban cubiertas por distintas fianzas de diferentes años. Por otra parte, si en un año ocurre más de un evento que debe ser cubierto por la fianza, entonces ésta se prorrotea entre todas las reclamaciones de ese año. Todo ello dentro de la perspectiva que el propósito de la fianza notarial es proteger a las personas de los daños y perjuicios que pueda causarle un notario en el ejercicio sus funciones.
En el caso de autos, la fianza vigente al 17 de abril de 1991, fecha en que se otorgó ante el notario la escritura testamentaria anulada y la fianza vigente para al 23 de abril de 1988, fecha en que se otorgó la escritura que se omitió llevar al Registro de la Propiedad, eran fianzas distintas que cubrían distintos años. La fianza anual cubre las actuaciones u omisiones incurridas por el notario en ese año, según lo dispone la Ley *774 Notarial que requiere de su renovación anual.
Por lo tanto, teniendo las escrituras defectuosas, en derecho de ambos pleitos, años diferentes, procede que la fianza notarial de cada año responda por la acción u omisión negligente del notario, de forma independientemente hasta la cantidad máxima de $20,000.00. No procede, como solicita el Colegio de Abogados, que se prorratee la cantidad máxima de la fianza en las dos sentencias, pues se trata de eventos en dos años distintos bajo dos fianzas y años distintos.
IV
Por los anteriores fundamentos, se confirma la sentencia apelada y se ordena al Colegio de Abogados a pagar la suma de $20,000.00 del Fondo de Fianza Notarial, en la demanda que originó el presente recurso apelativo.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General